[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Charles Hahn, hereinafter (Hahn) brings this Six Count Complaint against Mario Mozzillo, hereinafter (Mozzillo). Although the other plaintiff, wife of Hahn is a named party she did not appear for trial and essentially two claims for purposes of this decision are made and were testified to by Hahn.
The First Count alleges inter alia that Mozzillo is an attorney in the State of Connecticut. No evidence was presented that he is actively practicing in this state and is now living in Florida. He appears in this case Pro Se.
The First Count alleges that between 1987 and 1991 the plaintiffs turned over to Mozzillo for investment purposes the sum of $127,000 to invest in various real estate projects. The Hahns have repeatedly asked for an accounting of their investments but were never provided with one. Upon demand the only sums returned to the Hahns was $10,000. Essentially the breach of contract sought to be enforced is the return of their investment with an accounting. None has been given.
The Second Count sounds in Quantum Meruit. The Third Count is in unjust enrichment. The Fourth Count sounds in Tortious Breach of Contract. The Fifth Count sounds in misrepresentation and the Sixth Count sounds in CUTPA.
An examination of the file reveals correspondence not admissible as evidence and total disorganization.
The only operative defenses filed by the defendant is dated October 24, 1994 (See Pleading #104). Defendant sets up as a special defense "Plaintiff purchased from the defendant interest in property in the State of Florida. The plaintiff and his attorney have knowledge of the purchase and are fraudulently CT Page 12769 concealing it." Contained in the file is a fax requesting an amendment filed September 12, 1997 which the court denied. (Silbert, J.).
The case was assigned for trial before the undersigned. The only two witnesses in this case was the plaintiff Hahn and the defendant Mozzillo.
The plaintiff testified concerning the bizarre dealings between the parties.
Hahn testified he knew Mozzillo since 1968 through East Haven politics. He and his wife first invested with Mozzillo and received a nice profit.
A number of years later Hahn decided to make a further investment in building lots in Florida with Mozzillo who was then living in Florida and investing in real estate. Mozzillo had been a Connecticut attorney practicing in East Haven. Hahn trusted Mozzillo explicitly early in their business relationships.
On November 6, 1990 Mario Mozzillo acknowledged receiving $35,000 from Hahn (Exhibit B). The agreement appears to be an escrow agreement whereby Mozzillo was to purchase an interest in a general partnership of 1792 Equity Associates. No documentary evidence was introduced to demonstrate that any interest in any realty or partnership was made. Exhibit C shows an investment of $70,000 by Hahn in units to be purchased in St. Croix Equity Associates. This represents another bizarre history between the parties. Hahn had learned through his cousin who lived in St. Croix that some property appeared interesting as a good investment in St. Croix. Since Hahn still trusted his friend Mozzillo he discussed the deal with him because he believed Mozzillo had expertise in land investments. In order to put up the $70,000 acknowledged by Mozzillo for investment in St. Croix, Hahn placed a second mortgage on their home for the funds. Hahn testified the $70,000 he forwarded to Mozzillo was to be placed in the General Partnership with Hahn's relatives and Mozzillo for the purchase of property in St. Croix. (See Exhibit C).
Sometime in September 1992 Hahn became suspicious as to what was going on in St. Croix because his cousin had informed him the property was never purchased. Hahn demanded an accounting for the funds from Mozzillo which was never provided. CT Page 12770
Hahn demanded his money be returned. Defendants returned $10,000 on March 5, 1993 (see defendant's Exhibit 1). Hahn despite Mozzillo's recommendation to invest it in Florida with him insisted he only wanted to invest the $70,000 in St. Croix, the purpose for which he sent the monies to Mozzillo. Introduced in evidence Exhibit A is a bank check for $14,000 payable to Mozzillo dated April 25, 1991 which also has not been accounted for by Mozzillo. According to the testimony in this case Hahn placed the sums of $119,000 in the hands of Mozzillo which has never been satisfactorily accounted for to Hahn.
Plaintiff failed by his burden of proof to establish the cash of $30,000 he claimed to have turned over to Mozzillo.
Hahn in this case filed a complaint with the states attorney's office at New Haven. Hahn claimed, only after said complaint was filed did Mozzillo disclose an assignment of some interest in Lake Equity Associates. Hahn claimed the assignment executed by Mozzillo to demonstrate that Hahn had received consideration for the monies advanced was never agreed to by him. Nothing contained in the assignment indicated Hahn as the assignee.
The Assignment dated October 21, 1991 Exhibit 11, was not witnessed or received by Hahn. Plaintiff argues and the court agrees that the assignment could have been typed at any time and Hahn testified he neither agreed to accept the assignment or have knowledge until after his complaint to the states attorney's office.
Mozzillo introduced a complaint (Exhibit 15) filed in the State of Florida asserting thereby that the claim that the plaintiff made, is a judicial admission that the $127,500 was to be invested in Lake Equity Associates. (See paragraph 21 of Exhibit 15)
Mozzillo testified that when they met with problems in St. Croix he notified Hahn that St. Croix would take longer than anticipated and that if Hahn still wanted to keep his investment that there were other properties that Mozzillo had that had already been approved and ready to go and that he would assign Hahn an interest in them.
Hahn denies any such representation or any agreement that Mozzillo could use his monies other than for St. Croix and the CT Page 12771 only time he even became aware of such an assignment was after the fact if to be believed when he filed his complaint in the states attorney's office of Connecticut.
Hahn testified his attorney in this case had been Alan Silver of New Haven an associate of his attorney at trial. Silver was not subpoenaed for trial. Hahn further testified that he turned the matter over to Silver who engaged a Florida lawyer to seek his monies. Hahn testified be never spoke to his Florida lawyer directly about the case.
Mozzillo introduced in evidence as an admission and acknowledgement of the assignment Exhibit 15, a law suit in Hahn's behalf brought in the State of Florida wherein Hahn was seeking an accounting of Mozzillo's alleged assignment in Lake Equity Associates of $127,500. Mozzillo testified that he had assigned 60 % of his interest in the general partnership to Hahn for the monies Hahn advanced to him. The Florida allegations assert that Hahn authorized the investments in Lake Equity Associates and that Mozzillo converted these finds and that when he invested these funds Mozzillo had already received compensation for his interests in Lake Equities. The Florida complaint further asserts that Mozzillo misrepresented the facts about Lake Equity and had never provided any documentation of such an assignment. In fact the evidence in this case is that Mozzillo received the funds of $70,000 for the St. Croix investment after it was a dead deal in the mind of Mozzillo and contrary to the signed agreement Exhibit C. Mozzillo knowing that Hahn intended the funds for St. Croix testified that he told Hahn that if the St. Croix deal came alive again he would take the $70,000 out of Lake Equity and put it in St. Croix.
Mozzillo argues in his Post-trial Brief that the Florida complaint (Exhibit 15) constitutes a conclusive judicial admission which entitles him to a judgment as a matter of law.
Judicial admissions are conclusive only in judicial proceedings in which made. (See § 6.9g Tait and LaPlantes Handbook of Connecticut Evidence 2nd Ed. 1988). Section 6.8 further provides that the opposing party may offer proof of his own to refute the allegations of the Florida complaint. Essentially the allegations in this case are not in conflict. Hahn testified he was trying to recoup his life's savings when he turned the matter over to Attorney Alan Silver who handled the matter with Florida counsel. Hahn never spoke to the Florida CT Page 12772 attorney other than an inquiry as to the status of his case.
The party opposing the admission may offer evidence that the pleading was filed upon incorrect information and without his or her actual knowledge. (McCormack on Evidence 4th Ed. 1257 p. 149).
The court concludes from all the credible evidence that Hahn did not authorize the investment in Lake Equities if in fact such an investment was made. The defendant did not satisfactorily demonstrate either that the investment was made or that there was sufficient consideration for the alleged assignment. Mozzillo testified that the Florida action was dismissed.
Mozzillo testified he lost his interest in Lake Equities as did Hahn. The court does not absent other evidence and that Lake Equities was worth the monies that Mozzillo testified to.
Mozzillo at no time gave any accounting to Hahn and relies upon a prior dealing as being a practice that they had for investing.
Judgment may enter for the plaintiffs in the amount of $109,000 plus costs on the First Count.
No evidence was presented for a finding of CUTPA under the Sixth Count. In view of the courts decision on the First Count, the court does not address the other counts of the complaint.
Frank S. Meadow Judge Trial Referee